United States Courts
Southern District of Texas
FILED
NOV 25 2026
Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**GARY BEAN,**
*Plaintiff,*

v.

**AMAZE HOLDINGS, INC.,**
**AARON DAY**, Individually,
**JOEL KRUTZ**, Individually,
**GWAN YIP**, Individually,
**DANIELLE PEDERSON**, Individually,
**MICHAEL PRUITT**, Individually,
**PETE DEUTSCHMAN**, Individually,
**ERIC DOAN**, Individually,
**AMRAPALI GAN**, Individually,
**SANDIE HAWKINS**, Individually, and
**DAVID YACULLO**, Individually,
*Defendants.*

**Case No. ________________________**

**JURY TRIAL DEMANDED**

# PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff **Gary Bean** ("Plaintiff"), appearing *pro se*, brings this action against Defendants **Amaze Holdings, Inc.** ("Amaze" or "the Company"), **Aaron Day**, **Joel Krutz**, **Gwan Yip**, **Danielle Pederson**, **Michael Pruitt**, **Pete Deutschman**, **Eric Doan**, **Amrapali Gan**, **Sandie Hawkins**, and **David Yacullo** (collectively, "Individual Defendants," and together with Amaze, "Defendants"), and alleges upon personal knowledge as to Plaintiff's own acts and upon information and belief as to all other matters as follows:

## I. NATURE OF THE ACTION

1. This is a civil securities fraud and common-law fraud action under federal and Texas law arising out of a coordinated scheme of material public misrepresentations, material omissions, and manipulative market practices committed by Defendants in connection with Plaintiff's purchase, sale, and holding of Amaze Holdings, Inc. ("AMZE") common stock.

2. **Defendants committed actionable securities fraud by disseminating materially misleading half-truths and omitting material facts to create a false impression of imminent commercial revenue growth.** Prior to his removal as Chief Executive Officer and Chairman of the Board on July 31, 2026—and prior to Defendants' retention of investor-relations specialist David Zazoff and subsequent At-The-Market campaign that more than doubled the Company's share count—Defendant Aaron Day publicly touted two contracts with major companies, including during his January 15, 2026 broadcast appearance on *The Big Biz Show* and in a June 3, 2026 post on X stating, *"Our contract with BMG validates our model and our future. Look at the TAM for UMG, Sony, Warner and now with BMG/Concord Merging!!! This is huge for $AMZE,"* while concealing the material fact that those contracts generated zero revenue and carried no binding revenue commitments. By selectively boasting about marquee enterprise contracts to project imminent commercial revenue growth while omitting that the contracts carried no financial obligation whatsoever, Day and the Company created a classic, materially misleading half-truth that laid the promotional foundation for Defendants' ensuing capital-raising scheme. Under well-settled federal and Texas securities law, once Defendants chose to speak publicly about those contracts to induce investment, they were legally obligated to tell the whole truth rather than leave investors misled by non-revenue promotional window-dressing during the information blackout that followed.

3. **Through unlawful price stabilization, deceptive market manipulation, and material omissions, Defendants used the public market as a captive funding and governance mechanism—raising capital through massive share issuance under an information blackout while concealing the true collapse risk from Plaintiff and retail investors.** Beginning in late April 2026 and continuing over a period of several months prior to the

mid-2026 leadership transition, Defendants significantly upsized and continuously distributed shares through the Company's At-The-Market ("ATM") equity offering—more than doubling Amaze's common stock outstanding—while automated algorithmic buy and sell walls confined AMZE's share price within a narrow trading band above exchange delisting thresholds, simultaneously limiting the downside and capping the upside while the algorithmic buyer(s) accumulated that massive new supply inside the band. Although Defendants retained prominent investor-relations specialist David Zazoff just prior to when algorithmic accumulation appeared, Defendants issued virtually no substantive press releases throughout that entire period—and Defendant Joel Krutz subsequently admitted during a conference call with Plaintiff and four other retail shareholders (none of whom were subject to any non-disclosure agreement) that the Company was withholding press releases—confirming that the information blackout was intentional rather than coincidental. Because Amaze could not have more than doubled its share count inside a narrow price band without seeing that automated algorithmic buyer(s) were absorbing the ATM issuance—while simultaneously retaining a high-profile investor-relations advisor yet withholding substantive news—Defendants necessarily knew of, and upon information and belief participated in a conspiracy with, the algorithmic buyer(s) to unlawfully control AMZE's share price and absorb the upsized ATM distribution. And on July 13, 2026, while AMZE was still trading in real time above exchange delisting thresholds, that algorithmic bid floor was abruptly dropped down into delisting territory at approximately $0.07—triggering an immediate flash crash that the same algorithmic bid floor caught around $0.07. Upon information and belief, that engineered crash was intentionally executed pursuant to Defendants' conspiracy with the algorithmic buyer(s) and an internal governance effort by one or more members of the Board of Directors to precipitate a corporate crisis—directly leading to a multi-day trading halt beginning that same day, a 1-for-8 reverse stock split effective July 24, 2026, and the Board's removal of Defendant Aaron Day as CEO and Chairman on July 31, 2026. Moreover, that captive funding and governance mechanism continued after the flash crash: following the multi-day trading halt, the 1-for-8 reverse stock split effective July 24, 2026, and the resumption of trading, those same automated algorithmic buy and sell walls resumed confining AMZE's post-split trading price within an artificial band

while Defendants installed Defendant Joel Krutz as Interim CEO (and subsequently permanent CEO), circumvented public shareholder voting power through super-voting Series X Preferred Stock, and continued distributing tens of millions of additional shares—more than tripling Amaze's post-split share count from June 30, 2026 through November 13, 2026.

4. **Defendants cannot hide behind the general rule that corporate silence is lawful, because they intentionally suppressed material news to protect an artificial trading range and violated their statutory duty to disclose material facts or abstain from selling newly issued shares into the public market.** While a public company normally has no general obligation to issue voluntary press releases, Defendants' deliberate information blackout during the ATM distribution was unlawful for two independent reasons: first, Defendants intentionally suppressed corporate news—as Defendant Joel Krutz later admitted to Plaintiff and four non-NDA shareholders, even after Defendants retained investor-relations specialist David Zazoff—upon information and belief, specifically so that normal price discovery would not disrupt the algorithmic buy and sell walls, which constitutes an unlawful deceptive scheme under Rule 10b-5(a) and (c); and second, under federal and Texas securities law, Defendants were legally barred from actively selling newly issued ATM shares into the public market while concealing objective material facts—specifically, the massive ongoing share dilution and the fact that the touted "major company" contracts generated zero revenue and carried no binding revenue commitments—in direct violation of the disclose-or-abstain rule.

5. **Defendants disseminated materially misleading half-truths on public social media by blaming AMZE's price suppression on market-maker short selling and promising "a ton of good news coming on all fronts" while concealing their own massive At-The-Market share dilution and intentional press-release blackout.** Shortly after the automated algorithmic buy and sell walls began confining AMZE's share price in late April 2026—while Amaze was continuously flooding the market with newly issued ATM shares under an intentional news blackout—Defendant Aaron Day publicly posted on Stocktwits on May 6, 2026: *"Lots of speculation about what happened pre-*

*market today. Stock was surging up and then someone aggressively pushed it back down, pre-market so very sophisticated. #amze $AMZE has a ton of good news coming on all fronts and this is their major push to try and save their short position. All believers stay strong. This manipulation is not what Market Makers are for, and we are taking action with appropriate organization."* Under federal and Texas securities law, once Day chose to speak publicly on May 6, 2026 to explain why AMZE's pre-market surge was pushed back down and why its share price remained suppressed, he was legally obligated to disclose that Amaze itself was continuously selling massive volumes of newly issued ATM shares into the market—and could not falsely promise *"a ton of good news coming on all fronts"* while Defendants were intentionally withholding press releases.

6. **Defendants knowingly disseminated materially false statements projecting commercial readiness, business momentum, positive operating cash flow in 2027, and early-2027 break-even that were factually impossible given internal operational failures already underway.** Defendant Joel Krutz made two diametrically opposed public statements covering the exact same timeframe—one projecting rapid financial progress and the other admitting core operational failure—that cannot both be true at the same time. Following the mid-2026 leadership transition—including in Amaze's August 17, 2026 Q2 earnings release proclaiming *"Business Momentum Continues,"* Defendant Joel Krutz's August 26, 2026 press release claiming the next-generation platform put Amaze on a *"clear path to positive operating cash flow in 2027,"* Amaze's September 17, 2026 press release and official X (@amazecorporate) post featuring Joel Krutz's photograph and quoting him as stating that creators harnessing *"the power of the platform"* gave Amaze a *"clear, disciplined path to break even in early 2027,"* and Amaze's September 29, 2026 press release touting a purported *"Binding LOI"* to acquire BullionFX | Alchemy valued at US$155 million the exact morning NYSE American suspended trading for delisting—Defendants projected commercial readiness, momentum, and near-term cash-flow break-even. Yet on page 32 of Amaze's third-quarter Form 10-Q (filed November 13, 2026 and signed and certified by Joel Krutz), Defendants admitted the exact opposite: that Amaze's end-to-end commerce platform *"has failed to generate significant revenue"* and that management had already begun evaluating strategic alternatives *"beginning in*

*the second half of fiscal year 2026"* (July 1, 2026). Because the Company's core platform failure and strategic-alternatives review had already been determined at the start of July 2026, it was factually impossible for Defendants' promotional August and September 2026 press releases to be true—constituting textbook, intentional securities fraud and material misrepresentation designed to artificially inflate AMZE's share price and induce investors to buy and hold shares while concealing the Company's true operational collapse.

7. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered $149,086.56 in direct economic principal losses, together with severe mental anguish and emotional distress.

## II. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over Plaintiff's federal securities claims pursuant to Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's Texas statutory and common-law claims pursuant to 28 U.S.C. § 1367(a) because they arise out of the same common nucleus of operative fact.

9. This Court has personal jurisdiction over each Defendant pursuant to 15 U.S.C. § 78aa, which authorizes nationwide service of process in actions brought under the Exchange Act, and because Defendants transacted business in Texas, solicited investors, and purposefully disseminated false and misleading public disclosures, SEC filings, and broadcast interviews into the State of Texas, causing direct financial and personal injury to Plaintiff in Texas.

10. Venue is proper in the Southern District of Texas pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) because Plaintiff is a permanent resident of Montgomery County, Texas, within this District, and received, relied upon, and suffered injury from Defendants' misleading public disclosures and manipulative conduct within this District.

## III. PARTIES

11. **Plaintiff Gary Bean** is an individual and permanent resident of Spring, Montgomery County, Texas. Relying on the integrity of the market and Defendants' public disclosures, Plaintiff acquired shares of Amaze Holdings, Inc. common stock through a U.S. brokerage account on domestic U.S. exchanges prior to November 13, 2026, suffering $149,086.56 in direct principal losses.

12. **Defendant Amaze Holdings, Inc.** is a corporation organized under the laws of the State of Nevada with its principal executive offices in Costa Mesa, California, whose common stock traded under the ticker symbol AMZE.

13. **Defendant Aaron Day** served as Chief Executive Officer and Chairman of the Board of Amaze until his removal from both roles on July 31, 2026, and remained a member of the Board of Directors until his resignation from the Board on August 14, 2026. He is sued in his individual capacity.

14. **Defendant Joel Krutz** has served continuously as Chief Financial Officer of Amaze at all relevant times, concurrently served as Interim Chief Executive Officer following Aaron Day's departure on July 31, 2026, and subsequently executed the Company's November 19, 2026 Form 8-K as Chief Executive Officer while continuing to serve as principal financial officer. He is sued in his individual capacity.

15. **Defendant Gwan Yip** served as Chief Product Officer of Amaze at all relevant times, with direct operational responsibility over the engineering, rollout, and commercial readiness of the end-to-end commerce platform at issue. He is sued in his individual capacity.

16. **Defendant Danielle Pederson** served as Chief Marketing Officer of Amaze at all relevant times, with direct oversight over public brand communications, commercial

partnership announcements, and investor-facing promotional messaging. She is sued in her individual capacity.

17. **Defendant Michael Pruitt** served as a member of the Board of Directors of Amaze at all relevant times and, following Aaron Day's removal on July 31, 2026, served as Chairman of the Board of Directors. He is sued in his individual capacity.

18. **Defendants Pete Deutschman, Eric Doan, Amrapali Gan, Sandie Hawkins, and David Yacullo**, as members of the Board of Directors of Amaze at all relevant times, took *"a more active role in value creation alongside management"*—as explicitly announced in Amaze's August 3, 2026 and August 17, 2026 press releases and detailed in Section IV.G below—possessed direct governance authority, audit/disclosure oversight, and control over the Company's public filings, executive leadership, and equity offerings, and, upon information and belief, knowingly participated in and ratified the algorithmic ATM absorption conspiracy and the July 13, 2026 bid-floor drop used to precipitate the ouster of Defendant Aaron Day. They are sued in their individual capacities, with Defendants Deutschman, Gan, and Hawkins having served continuously on the Board until their simultaneous resignations effective November 13, 2026, the exact day the Q3 Form 10-Q was filed (as disclosed in Amaze's November 19, 2026 Form 8-K).

## IV. FACTUAL ALLEGATIONS

### A. Defendants Committed Actionable Securities Fraud by Disseminating Materially Misleading Half-Truths and Omitting Material Facts to Create a False Impression of Imminent Commercial Revenue Growth.

19. Prior to his removal as Chief Executive Officer and Chairman of the Board on July 31, 2026—and prior to Defendants' retention of investor-relations specialist David Zazoff and subsequent At-The-Market campaign that more than doubled the Company's share

count—Defendant Aaron Day, speaking on behalf of Amaze in public investor communications including his January 15, 2026 broadcast appearance on *The Big Biz Show*, represented to the investing public that Amaze had executed two contracts with major companies that would take effect in March 2026 and generate events involving thousands of people in person and millions online. Defendant Day further reinforced that promotional narrative during the ensuing At-The-Market distribution window in a June 3, 2026 post on X stating: *"Our contract with BMG validates our model and our future. Look at the TAM for UMG, Sony, Warner and now with BMG/Concord Merging!!! This is huge for $AMZE."*

20. Those statements were materially false and misleading half-truths by omission because Aaron Day and the Company selectively boasted about marquee enterprise contracts—and promised March 2026 launches reaching thousands in person and millions online that never occurred—while failing to disclose that neither contract generated revenue or contained binding minimum revenue commitments, leaving investors misled by that non-revenue promotional window-dressing during the information blackout that followed.

21. Reasonable investors, including Plaintiff, relied upon those representations in purchasing and holding AMZE shares.

**B. Through Unlawful Price Stabilization, Deceptive Market Manipulation, and Material Omissions, Defendants Used the Public Market as a Captive Funding and Governance Mechanism—Raising Capital Through Massive Share Issuance Under an Information Blackout While Concealing the True Collapse Risk From Plaintiff and Retail Investors.**

22. Beginning in late April 2026 and continuing over a period of several months leading into July 13, 2026, the day of the flash crash, public Level 2 order-book data for AMZE reflected persistent automated algorithmic buy and sell walls confining AMZE's share price within a narrow trading band above exchange minimum bid-price delisting thresholds—simultaneously limiting the downside and capping the upside while the algorithmic buyer(s) systematically accumulated shares inside that band.

23. During this exact window, Defendants substantially upsized Amaze's At-The-Market ("ATM") equity offering facility and continuously sold newly issued shares into that algorithmic market demand—more than doubling Amaze's common stock outstanding. Notably, just prior to when algorithmic accumulation began, Defendants retained high-profile investor-relations specialist David Zazoff, yet issued no substantive press releases during the entire ATM absorption window—and Defendant Joel Krutz subsequently admitted during a conference call with Plaintiff and four other retail shareholders (none of whom were subject to any non-disclosure agreement) that the Company was withholding press releases—demonstrating that suppressing corporate news while concealing the massive ongoing ATM share expansion and non-revenue contract terms was deliberate and designed to prevent normal price discovery from disrupting the controlled trading range. Given the sheer volume of shares distributed—more than doubling the Company's public float inside a tight trading band—while simultaneously retaining an experienced investor-relations advisor yet suppressing substantive announcements, Defendants necessarily knew that automated algorithmic buyer(s) were systematically absorbing the ATM issuance and, upon information and belief, engaged in a conspiracy with those algorithmic buyer(s) to unlawfully control AMZE's share price and use the public market as a captive funding and governance mechanism.

24. On July 13, 2026, while AMZE's real-time share price was still trading above exchange delisting thresholds, that algorithmic bid floor was abruptly dropped down into delisting territory at approximately $0.07—creating an immediate flash crash down to approximately $0.07, where the lowered algorithmic bid floor caught the crash and absorbed panic-sold shares. Upon information and belief, that abrupt drop of the bid floor to approximately $0.07 was intentionally executed pursuant to Defendants' conspiracy with the algorithmic buyer(s) and an internal governance effort by one or more members of the Board of Directors to force the ouster of Defendant Aaron Day, directly triggering a multi-day trading halt beginning that same day, a 1-for-8 reverse stock split effective July 24, 2026, and the Board's removal of Aaron Day as CEO and Chairman on July 31, 2026. Following the multi-day trading halt, the 1-for-8 reverse stock split effective July

24, 2026, and the resumption of trading, automated algorithmic buy and sell walls resumed confining AMZE's post-split share price within an artificial trading band—confirming that the scheme functioned as an ongoing governance and funding mechanism to oust Aaron Day, install Defendant Joel Krutz as Interim CEO (and subsequently permanent CEO), insulate management from public shareholder voting power through super-voting Series X Preferred Stock, and continue distributing tens of millions of additional shares—more than tripling Amaze's post-split common stock outstanding from June 30, 2026 through November 13, 2026.

**C. Defendants Cannot Hide Behind the General Rule That Corporate Silence Is Lawful, Because They Intentionally Suppressed Material News to Protect an Artificial Trading Range and Violated Their Statutory Duty to Disclose Material Facts or Abstain From Selling Newly Issued Shares Into the Public Market.**

25. Despite more than doubling the Company's share count through continuous ATM sales—which under normal market conditions would have driven the share price sharply lower—AMZE's price remained confined within a tight range solely because algorithmic buying absorbed the newly issued supply while Defendants' deliberate information blackout prevented normal price discovery. Throughout that entire ATM distribution window, Defendants withheld substantive press releases—even after retaining investor-relations specialist David Zazoff, and as Defendant Joel Krutz later admitted during a conference call with Plaintiff and four non-NDA shareholders. Upon information and belief, Defendants intentionally suppressed those press releases specifically to prevent normal price discovery and external news catalysts from disrupting the automated algorithmic buy and sell walls, thereby engaging in an unlawful deceptive market scheme under Rule 10b-5(a) and (c).

26. Moreover, while a public company generally has no affirmative duty to issue voluntary press releases when it is not trading in its own securities, Defendants forfeited any "corporate silence" defense the moment they actively sold newly issued ATM shares into the public market. Under settled federal and Texas securities law, an issuer and its

officers may not sell newly issued stock into the open market while concealing objective material facts—specifically, the massive ongoing ATM share dilution and the fact that the touted "major company" contracts generated zero revenue and carried no binding revenue commitments—rendering Defendants' continuous ATM sales under an information blackout a direct violation of their statutory duty to disclose material facts or abstain from selling securities.

**D. Defendants Disseminated Materially Misleading Half-Truths on Public Social Media by Blaming AMZE's Price Suppression on Market-Maker Short Selling and Promising "a Ton of Good News Coming on All Fronts" While Concealing Their Own Massive At-The-Market Share Dilution and Intentional Press-Release Blackout.**

27. Shortly after the algorithmic buy and sell walls began confining AMZE's share price in late April 2026, Defendant Aaron Day publicly posted on Stocktwits on May 6, 2026: *"Lots of speculation about what happened pre-market today. Stock was surging up and then someone aggressively pushed it back down, pre-market so very sophisticated. #amze $AMZE has a ton of good news coming on all fronts and this is their major push to try and save their short position. All believers stay strong. This manipulation is not what Market Makers are for, and we are taking action with appropriate organization."* Once Day chose to speak publicly on May 6, 2026 to explain why AMZE's pre-market rally was pushed back down and why its share price remained suppressed, he was legally obligated to disclose that Amaze itself was continuously flooding the market with newly issued ATM shares—and could not falsely promise *"a ton of good news coming on all fronts"* while Defendants were intentionally withholding press releases.

**E. Defendants Knowingly Disseminated Materially False Statements Projecting Commercial Readiness, Business Momentum, Positive Operating Cash Flow in 2027, and Early-2027 Break-Even That Were Factually Impossible Given Internal Operational Failures Already Underway.**

28. On July 14, 2026—one day after the July 13, 2026 flash crash and while AMZE remained frozen in a NYSE American trading halt, and two weeks after management had already begun evaluating strategic alternatives on July 1, 2026 due to core platform failure—Defendant Aaron Day posted on X stating, *"...as we continue to build out the worlds leading creator operating system,"* following his July 7, 2026 Shareholder Letter touting the buildout and rollout of Amaze's upgraded Amaze Commerce platform. Through these statements, Defendants aggressively promoted the technological superiority and commercial readiness of Amaze's platform to reassure trapped shareholders during the trading halt, even though, as detailed in Paragraph 32 below, Amaze was forced in Q3 2026 to record a $17,713,000 intangible-asset impairment charge wiping out over 85% of its acquired software and creator-commerce platform assets (including writing off its Spring platform assets in full).

29. On August 17, 2026—more than six weeks into the third quarter—Amaze issued its second-quarter 2026 financial results press release proclaiming *"Sequential Improvement Across Revenue, Margin, Net Loss and Balance Sheet"* and stating *"Company Leadership Reaffirm Commitment to Value Creation as Business Momentum Continues."*

30. Nine days later, on August 26, 2026—nearly two months into the third quarter of fiscal year 2026—Defendant Joel Krutz issued an official public press release stating that moving to Amaze's next-generation platform put the Company on a *"clear path to positive operating cash flow in 2027."* Thereafter, on September 17, 2026—less than two weeks before the end of the third quarter—Amaze issued both a press release claiming its upgraded commerce platform was *"fully operational"* and in *"growth mode,"* and an official post on X (@amazecorporate) featuring Defendant Joel Krutz's photograph and attributing to him the direct statement: *"The next generation of Amaze will be built on a foundation of subscription revenues as creators harness the power of the platform to build their businesses. Paired with our cost reduction program, this gives us a clear, disciplined path to break even in early 2027."*

31. Those representations regarding the platform's readiness, ongoing business momentum, and cash-flow/break-even trajectory were materially false and misleading when made, and Defendants Joel Krutz, Aaron Day, Gwan Yip, and Danielle Pederson knew or were severely reckless in disregarding that Amaze's end-to-end commerce platform was already failing to generate significant revenue.

32. On November 13, 2026, Amaze filed its third-quarter Form 10-Q, signed and certified by Defendant Joel Krutz, disclosing a 63% year-over-year revenue decline to $469,448, a $22.23 million quarterly net loss, substantial going-concern doubt, and—directly refuting Defendants' prior claims of technological superiority and commercial readiness detailed in Paragraphs 28–30 above—a $17,713,000 intangible-asset impairment charge (Pages 2–3 and Notes to Condensed Consolidated Financial Statements), which wiped out over 85% of the Company's $20.64 million net intangible asset balance from the prior quarter and wrote off its Spring creator-commerce platform and Food Channel technology assets in full due to their inability to generate projected cash flows.

33. Specifically, on page 32 of the November 13, 2026 Form 10-Q, Defendants admitted that the Company *"has failed to generate significant revenue from its end-to-end commerce platform operations and beginning in the second half of fiscal year 2026, the Company began evaluating strategic alternatives designed to reposition its business for long-term growth."*

34. Because July 1, 2026 is simultaneously the start of the second half of fiscal year 2026 and the beginning of the third quarter, the Form 10-Q's admission means management had already started evaluating strategic alternatives due to platform revenue failure at the very beginning of Q3—weeks *before* Defendant Joel Krutz even stepped into the Interim CEO role on July 31, 2026. **As a result, Defendant Joel Krutz made two diametrically opposed public statements covering the exact same timeframe that cannot both be true at the same time:**

| **What Defendant Joel Krutz Told the Public (August – September 2026)** | **What Defendant Joel Krutz Certified in the Q3 Form 10-Q (Filed November 13, 2026)** |
| --- | --- |

**August 17, 2026 (Q2 Earnings Release):** Proclaimed *"Sequential Improvement Across Revenue, Margin, Net Loss and Balance Sheet"* and *"Business Momentum Continues."*

**Page 32 & Financial Statements — Q3 2026 (Ended September 30, 2026):** Admitted Amaze's end-to-end commerce platform ***"has failed to generate significant revenue"*** and disclosed a 63% year-over-year revenue collapse to $469,448 and substantial going-concern doubt.

**August 26, 2026 (Press Release):** Claimed moving to Amaze's next-generation platform put the Company on a ***"clear path to positive operating cash flow in 2027."***

**Page 32 — Beginning July 1, 2026 (Prior to August 17, August 26, and September 17):** Admitted that ***"beginning in the second half of fiscal year 2026"* (July 1, 2026)**—more than six weeks *before* August 17 and nearly two months *before* August 26—management had already begun evaluating strategic alternatives to reposition the business.

**September 17, 2026 (Press Release & @amazecorporate X Post):** Claimed the upgraded commerce platform was ***"fully operational"*** and in ***"growth mode,"*** giving Amaze a ***"clear, disciplined path to break even in early 2027."***

**Pages 2–3 & Notes — Q3 2026 Impairment Write-Off:** Recorded a **$17,713,000 intangible-asset impairment charge** wiping out over 85% of acquired software/platform assets (writing off Spring and Food Channel in full) due to their inability to generate projected cash flows.

That timing makes it factually impossible for Joel Krutz—who served continuously as Chief Financial Officer throughout that entire period—to claim his August 26 and September 17 break-even promises were simply overtaken by unexpected late-quarter deterioration, because the deterioration and strategic-alternatives search were already underway from the beginning of the third quarter.

**F. Defendants Issued Deceptive Acquisition Hype—Including a Purported $155 Million "Binding LOI" on the Exact Morning NYSE American Suspended Trading for Delisting—While Concealing Core Platform Failure and Putting a $100 Million Dilutive Equity Line in Place.**

35. On July 27, 2026, following its 1-for-8 reverse stock split, Amaze issued a press release announcing *"Full Compliance with NYSE American Continued Listing Standards and Resumption of Trading."* Yet over the ensuing two months, Defendants issued a string of promotional announcements—including an August 20, 2026 Letter of Intent for C2 and a September 16, 2026 C2 referral partnership—while omitting the severe operational deterioration later admitted in the Q3 Form 10-Q.

36. On the morning of September 29, 2026, hours before NYSE American suspended trading in AMZE stock and commenced delisting proceedings under Section 1003(f)(v) due to its

collapsing share price, Defendants issued a press release touting a purported *"Binding LOI to Acquire BullionFX | Alchemy, a Decentralized Gold-Backed Financial Ecosystem Valued at US$155 Million,"* creating a misleading impression of transformative corporate value even as the Company was being delisted and elected on September 30, 2026 not to appeal the delisting.

37. Thereafter, on October 15–16, 2026, following delisting, Defendant Joel Krutz executed a Securities Purchase Agreement and Form 8-K establishing a $100 million equity line facility with C/M Capital Master Fund, LP, continuing to put massive dilutive equity facilities in place while concealing the July 2026 failure of Amaze's core commerce platform until the November 13, 2026 Form 10-Q. Throughout this entire period, Defendants' string of promotional press releases—touting next-generation platform growth, the August 20, 2026 C2 Letter of Intent, the September 16, 2026 C2 referral partnership, and the purported $155 million BullionFX | Alchemy "Binding LOI"—projected an active, expanding going concern, even as Defendants were simultaneously dismantling core operations, shutting down Spring, taking down substantial portions of the Amaze Holdings corporate website, writing off $17,713,000 in intangible assets, and moving toward winding down the business.

**G. Amaze's Board of Directors Publicly Assumed Direct, Hands-On Control-Person Governance Over Strategy, Executive Leadership, SEC Filings, and Dilutive Financings Before Half of the Six-Member Board Abruptly Resigned on the Exact Day the Q3 Form 10-Q Was Filed.**

38. Defendants Michael Pruitt, Pete Deutschman, Eric Doan, Amrapali Gan, Sandie Hawkins, and David Yacullo, as members of Amaze's Board of Directors, publicly assumed direct, hands-on oversight over corporate strategy and disclosures—explicitly announcing in Amaze's August 3, 2026 press release that the *"Current Board of Directors [was] to Take a More Active Role in Value Creation,"* and reiterating in Amaze's August 17, 2026 second-quarter earnings release that *"the Board has committed to taking a more active role in value creation alongside management, and both remain focused on*

*executing the Company's strategic priorities."* Pursuant to that active governance mandate, the Board exercised direct control over executive management, reviewed and approved periodic SEC filings (including the Form 10-Q, Form 8-K filings, and registration supplements), authorized the upsized ATM equity facility and October 2026 $100 million equity line, oversaw the ouster of Aaron Day, the installation of Defendant Joel Krutz as Interim CEO (and subsequently permanent CEO), and the use of super-voting Series X Preferred Stock to circumvent the voting power of public shareholders while more than tripling Amaze's post-split common stock outstanding, and oversaw the reverse stock split and unappealed NYSE American delisting—before half of the six-member Board (Defendants Deutschman, Gan, and Hawkins) abruptly resigned effective November 13, 2026, the exact day the Q3 Form 10-Q was filed (as disclosed in Amaze's November 19, 2026 Form 8-K).

**H. Plaintiff's Reliance and Injury**

39. At all times during which Defendants committed the fraudulent misrepresentations, omissions, and manipulative acts alleged herein—through the morning of September 29, 2026—AMZE common stock traded publicly on NYSE American, a national securities exchange, in an active, open, and efficient market characterized by surging trading volume well above historical averages. Plaintiff personally read, viewed, and directly relied upon Defendants' materially false and misleading statements, half-truths, and omissions—including Aaron Day's January 15, 2026 broadcast appearance on *The Big Biz Show*, his May 6, 2026 Stocktwits post, his June 3, 2026 X post regarding BMG, his July 14, 2026 X post during the NYSE American trading halt, Joel Krutz's August 26, 2026 and September 17, 2026 press releases and X posts, and the September 29, 2026 BullionFX | Alchemy "Binding LOI" press release—as well as the integrity of AMZE's NYSE American market price and Level 2 order book in acquiring and holding shares prior to November 13, 2026. Had Plaintiff known the truth concealed by Defendants, Plaintiff would not have purchased or held AMZE common stock at the prices paid.

40. When the truth regarding Amaze's non-revenue contracts, algorithmic price manipulation, engineered July 13, 2026 $0.07 flash crash, massive ATM and equity-line dilution, circumvention of public shareholder voting power through super-voting Series X Preferred Stock, unappealed NYSE American delisting, and failing commerce platform reached the market—culminating in the November 13, 2026 Form 10-Q—the value of Plaintiff's holdings collapsed, causing $149,086.56 in direct economic losses and severe, documented mental anguish and disruption to Plaintiff's daily life.

## V. CAUSES OF ACTION

### COUNT I: Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 (Against Amaze, Aaron Day, Joel Krutz, Gwan Yip, and Danielle Pederson).

41. Plaintiff realleges paragraphs 1 through 40 as if fully set forth herein.

42. Defendants Amaze, Aaron Day, Joel Krutz, Gwan Yip, and Danielle Pederson, in connection with the purchase or sale of securities, knowingly or with severe recklessness made untrue statements of material fact, omitted material facts necessary to make statements not misleading, and engaged in deceptive acts and practices operating as a fraud upon Plaintiff in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.

43. As a direct and proximate result, Plaintiff suffered $149,086.56 in economic damages.

### COUNT II: Violation of Section 9(a) of the Exchange Act (Against All Defendants).

44. Plaintiff realleges paragraphs 1 through 43 as if fully set forth herein.

45. Under Section 9(a)(2) and Section 9(a)(6) of the Exchange Act (15 U.S.C. § 78i(a)(2), (6)), it is unlawful for any person, directly or indirectly, *"alone or with 1 or more other persons,"* to effect a series of transactions in a security *"creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the*

*purpose of inducing the purchase or sale of such security by others,"* or *"for the purpose of pegging, fixing, or stabilizing the price of such security in contravention of such rules and regulations as the Commission may prescribe."* Defendants knowingly or recklessly violated 15 U.S.C. § 78i(a)—alone or in concert with one another and, upon information and belief, with automated algorithmic buyer(s)—by pegging, fixing, and stabilizing AMZE's trading price within a narrow band above exchange delisting thresholds, using automated algorithmic buy and sell walls to simultaneously limit the downside and cap the upside while accumulating massive ATM share supply inside the band and suppressing substantive press releases despite retaining investor-relations specialist David Zazoff, inducing Plaintiff to purchase and hold AMZE shares before abruptly dropping that algorithmic bid floor down to approximately $0.07 while AMZE traded above delisting thresholds, engineering a flash crash caught at approximately $0.07, and then resuming those automated algorithmic buy and sell walls following the trading halt, 1-for-8 reverse stock split, and resumption of trading to continue pinning AMZE's post-split price while installing Joel Krutz as Interim CEO (and subsequently permanent CEO), utilizing super-voting Series X Preferred Stock to circumvent public shareholder voting power, and distributing tens of millions of additional shares, causing $149,086.56 in direct economic damages.

**COUNT III: Control-Person Liability Under Section 20(a) of the Exchange Act (Against All Individual Defendants).**

46. Plaintiff realleges paragraphs 1 through 45 as if fully set forth herein.

47. By virtue of their positions as executive officers and members of the Board of Directors, the Individual Defendants possessed the power and authority to control the contents of Amaze's public statements, SEC filings, and equity offerings, and were culpable participants in the primary violations alleged above, rendering them jointly and severally liable under 15 U.S.C. § 78t(a).

**COUNT IV: Violations of the Texas Securities Act (Tex. Gov't Code §§ 4008.052, 4008.055) (Against All Defendants).**

48. Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

49. Defendants offered, sold, and materially aided in the sale of securities by means of untrue statements of material fact and material omissions in violation of Texas Government Code § 4008.052, and the Individual Defendants are jointly and severally liable as control persons and material aiders under Texas Government Code § 4008.055.

50. Plaintiff tenders all shares of Amaze common stock still held that were acquired prior to November 13, 2026 and seeks statutory rescission and/or statutory damages in the amount of $149,086.56, statutory interest, court costs, and reasonable attorney's fees pursuant to Texas Government Code § 4008.056.

**COUNT V: Texas Common-Law Fraud and Fraud by Nondisclosure (Against All Defendants).**

51. Plaintiff realleges paragraphs 1 through 50 as if fully set forth herein.

52. As detailed above, Defendants made materially false representations and concealed material facts that Defendants had a legal duty to disclose under Texas law because Defendants made partial disclosures creating a materially false impression, voluntarily spoke to the investing public without disclosing the whole truth, and failed to correct prior representations that became false or misleading. Defendants made those misrepresentations and omissions with knowledge of their falsity or reckless disregard for the truth, intending that Plaintiff rely thereon, and Plaintiff reasonably and justifiably relied upon them to Plaintiff's direct detriment, suffering $149,086.56 in actual economic damages and severe mental anguish.

**COUNT VI: Texas Civil Conspiracy (Against All Defendants).**

53. Plaintiff realleges paragraphs 1 through 52 as if fully set forth herein.

54. Defendants combined, agreed, and conspired with one another—and, upon information and belief, with the automated algorithmic buyer(s)—to accomplish an unlawful purpose and to accomplish a lawful purpose by unlawful means, specifically the securities fraud, fraud by nondisclosure, and market manipulation alleged above, and committed overt, unlawful acts in furtherance of that conspiracy, proximately causing Plaintiff's damages.

55. Because Defendants acted with actual malice and fraud within the meaning of Texas Civil Practice and Remedies Code § 41.003, Plaintiff is entitled to recover under Counts V and VI actual economic damages of $149,086.56, noneconomic mental anguish damages up to $750,000.00, and exemplary damages pursuant to Texas Civil Practice and Remedies Code § 41.008, bringing total recoverable damages to $1,197,259.68, plus prejudgment and postjudgment interest.

## VI. PRAYER FOR RELIEF.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants, jointly and severally, awarding:

a. Actual economic damages, statutory rescission, and/or statutory damages in the amount of $149,086.56;

b. Noneconomic mental anguish damages up to $750,000.00;

c. Exemplary damages under Texas Civil Practice and Remedies Code § 41.008 in the amount of $298,173.12 (or up to the full statutory maximum permitted by law), for a total recovery of $1,197,259.68;

d. Prejudgment and postjudgment interest at the highest rates permitted by federal and Texas law;

e. Reasonable attorney's fees and costs of suit; and

f. Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: November 25, 2026

Respectfully submitted,

**Gary Bean**, *Pro Se*
330 Rayford Road, PMB 218
Spring, Texas 77386
832-813-2574
garybean1@gmail.com